UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULIO VELEZ,

                                    Petitioner,

            - against -

ROBERT CUNNINGHAM, Superintendent, Green
Haven Correctional Facility,

                                    Respondent.

09 Civ. 6506 (NSR)(LMS)

**REPORT AND
RECOMMENDATION**

TO:   **THE HONORABLE NELSON ROMÁN,
      UNITED STATES DISTRICT JUDGE[1]**

Petitioner Julio Velez, proceeding pro se, filed a Petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in which he challenges the constitutionality of his 2004 state court

conviction of two counts of burglary in the second degree and one count of criminal possession

of stolen property in the third degree.  Pet. ¶ 2, D.E. 1.  Petitioner seeks habeas relief on five

grounds: (1) the Westchester County District Attorney ("WCDA") did not prove Petitioner's

guilt beyond a reasonable doubt because the verdict was based on legally insufficient evidence

and was against the weight of the evidence; (2) the trial court erroneously denied Petitioner's

motion to reopen a suppression hearing; (3) Petitioner's sentence was excessive; (4) the trial

court erroneously denied Petitioner's motion to suppress identification testimony; and (5) the

WCDA failed to provide exculpatory evidence in a timely manner, in violation of Brady v.

---

[1] This matter was referred to me pursuant to 28 U.S.C. § 636(b) for habeas corpus purposes by
the Honorable Cathy Seibel, United States District Judge, to whom the matter was previously
assigned.  See Order of Reference, Docket Entry (herein,"D.E.") 3.

1

Maryland, 373 U.S. 83 (1963).  Pet. ¶ 5.  For the following reasons, I conclude, and respectfully

recommend that Your Honor should conclude, that the instant Petition should be dismissed.

## BACKGROUND

### I.     The Crime and the Investigation

At approximately 9:45 A.M. on November 21, 2003, James Nolan, who lived at 174

Tibbetts Road in Yonkers, New York, answered a knock on his door.  T: 220 - 224.  The man at

the door, who Nolan later identified as Petitioner, asked if he had any rooms for rent.  T: 224 -

26.  Nolan described Petitioner as wearing a blue jacket over a yellow jacket; the collar of the

yellow jacket was visible.  T: 224 - 25.  When Nolan replied that he did not have any rooms for

rent, Petitioner left, and Nolan watched as Petitioner walked down Tibbetts Road, looking

around the neighborhood.  T: 225 - 228.  Nolan saw Petitioner speak with Michael McGee,

Nolan's neighbor.  T: 228.  McGee, a retired police detective, testified at trial that Petitioner rang

his doorbell between 9:45 A.M. and 10:00 A.M. that morning, asked if he had a room for rent,

and then left after he answered in the negative.  T: 290 - 91.

When Nolan lost sight of Petitioner as Petitioner continued down the road, he went onto

his porch and noticed a yellow scooter in the hedge by his house.  T: 229.  Nolan watched as

Petitioner returned for his scooter and walked back down the road.  T: 230 - 32.  Nolan lost sight

of Petitioner again, but could see that Petitioner had moved the scooter so that it was parked by

the fence of 184 Tibbetts Road.  T: 231 - 32.  Nolan then sat in his truck, which was parked

across the street from his home, and watched the scooter from the truck's side mirror for

approximately eight minutes, until he returned to his house to call 9 - 1 - 1.  T: 232 - 33.  Nolan

then saw Petitioner run from the side of 184 Tibbetts Road and drive by Nolan's house on the

scooter, traveling south on Tibbetts Road towards McLean Avenue in Yonkers. T: 233. McGee also observed Petitioner drive down Tibbetts Road on a yellow scooter. T: 301.

At approximately 10:15 A.M., Frederick Furey, who lived at 36 Lee Avenue in Yonkers, saw a man wearing what he described as a dark blue jacket with a yellow hood near the house at 23 Lee Avenue, which was diagonally across the street from his home. T: 416, 422 - 24. Furey testified at trial that the man was riding a "very bright yellow motor cycle or electronic bike" and that he parked the bike on the driveway of 25 Lee Avenue. T: 422 - 24. Furey watched the man walk behind 25 Lee Avenue, then come back to the front and look into the window of the house. T: 426. Furey then observed the man walk toward 23 Lee Avenue, look in a window, approach the front door, and walk down the driveway, where the man disappeared from Furey's sight. T: 427.[2]

At approximately 10: 16 A.M., Yonkers Police Detective Roger Benash received a radio alert of a "suspicious person" in the vicinity of 174 Tibbetts Road who was described as a Hispanic male wearing a blue jacket with a gold collar and driving a yellow scooter. De Novo Hrg. Tr. (June 18, 2007) (herein "D1") at 6 - 7. The broadcast also included information connecting this suspicious person to a series of burglaries which had occurred near 174 Tibbetts Road. D1: 6. He learned through an additional radio transmission that an open window had been observed at 184 Tibbetts Road, and that an individual matching the above description had been seen fleeing that area. D1: 6. Benash "took up a spot of observation" in an unmarked police car on McLean Avenue. T: 490 - 91.

---

[2] Unlike Nolan and McGee, Furey never identified Petitioner at trial as the man he had seen on November 21, 2003. See generally T: 416 - 32.

At about 10:30 A.M., Benash saw a man who he later identified as Petitioner driving toward him on a yellow scooter, wearing a blue jacket with a yellow collar.  T: 492.   Benash and other officers, including Yonkers Police Investigator Angelo Prestamo, stopped Petitioner as he was driving his scooter.  T: 357 - 60, 493.  Benash testified that he then explained to Petitioner that he was investigating an incident, and asked Petitioner to sit down on the sidewalk.  T: 494 - 95.

After receiving a radio transmission at 10:36 A.M. that a suspect had been stopped, Yonkers Sergeant Michael Kreso, who had responded to Nolan's home after his 9 - 1 - 1 call and who had interviewed Nolan and McGee, drove the witnesses to the location where Petitioner was stopped.  De Novo Hrg. Tr. (June 19, 2007)(herein, "D2") at 207 - 09; T: 235, 303 - 04, 519. Kreso testified at a suppression hearing that Petitioner was seated on the curb when he first arrived with Nolan and McGee.  D2: 218.  Kreso stated that after Nolan and McGee positively identified Petitioner, Kreso stepped out of his vehicle and nodded affirmatively to the officers surrounding Petitioner to indicate that the identification had been made.  D2: 224.  Kreso stated that after he gave the nod, one of the two witnesses stepped out of Kreso's vehicle to confirm his identification of Petitioner.  D2: 224 - 25.  Prestamo also testified that Petitioner was seated on the curb when Nolan and McGee identified him and was not handcuffed at that time.  T: 398. Benash testified at trial that after the witnesses identified Petitioner, police had Petitioner lie on the ground, then they handcuffed him and searched him.  T: 521.  However, at trial, Nolan testified that he identified Petitioner from the car while Petitioner was lying face down on the ground, handcuffed, and being searched.  T: 280 - 81.  McGee also testified that he identified Petitioner while Petitioner was being searched.  T: 294, 305.

4

During the search incident to Petitioner's arrest, the officers recovered jewelry, war medals, and U.S. currency totaling approximately $4,212.42 from Petitioner's person. T: 365, 496, 547 - 48. Petitioner told Benash that the jewelry belonged to his girlfriend and that the money belonged to his friend. T: 498.

When Leyda Salamanca returned from work to her home at 184 Tibbetts Road at approximately 11:00 A.M., she noticed that the door on her back deck and a window in her basement were open and that the window's lock was broken. T: 319 - 20. Salamanca testified that when she came home, her bedroom was "a mess": the drawers from her bureau were open, her clothes were strewn on the floor, and jewelry boxes lay scattered on her bed and floor. T: 320 - 22. Later that day, Salamanca went to police headquarters and identified items that belonged to her among the items police had recovered from their search of Petitioner. T: 323 - 42, 377 - 88.

When Helen Swift returned home from work that day to her home at 23 Lee Avenue, her back door was open, the bedroom "drawers were pulled opened [sic] and emptied," and she was missing money, military paraphernalia, and jewelry. T: 434 - 72. The police also recovered Swift's belongings from Petitioner. T: 534.

## II.     Procedural History

### A.     Pre-Trial Proceedings

Respondent affirms that on April 28, 2004, Petitioner was indicted on two counts of burglary in the second degree, one count of criminal possession of stolen property in the third degree, and two counts of petit larceny. Resp't's Aff. in Opp'n 5.[3]  Respondent affirms that on

---

[3]Respondent has not provided the Court with a copy of the Indictment. However, as Petitioner does not challenge Respondent's statement of the charges in the Indictment, I see no need for Respondent to produce the Indictment.

May 4, 2004, Petitioner was arraigned on the indictment in Westchester County Court.  Id. Petitioner then filed an omnibus motion in which he argued that the physical evidence recovered from his person during the search incident to his arrest be suppressed, as his arrest was unlawful, and that the court suppress Nolan's and McGee's identification testimony.  Id.  To address the suppression motion, Westchester County Court Judge Adler conducted a pretrial suppression hearing.  See Hrg. Tr. (Oct. 6, 8, 12, 2004)(herein, respectively, "H1," "H2," and "H3").  On October 12, 2004, as discussed more fully in Section II.B, infra, the court denied Petitioner's motion to suppress the physical evidence and identification testimony.

**B.     Trial and Sentencing**

On October 13, 2004, Petitioner's trial by jury commenced before Judge Adler.  H3: 16. As discussed more fully herein, after Nolan, who had not testified during the pretrial suppression hearing, testified at trial that when he identified Petitioner, Petitioner had been lying face down, in handcuffs, as police searched him, not seated on the curb, without handcuffs, as the police had testified at the suppression hearing, Petitioner moved to reopen the suppression hearing.  T: 284 - 85, 407.  Judge Adler denied the motion, and directed that the trial continue.  T: 409 - 414.  On October 19, 2004, the jury convicted Petitioner of two counts of burglary in the second degree and one count of criminal possession of stolen property in the third degree.  T: 660 - 61.   The court sentenced Petitioner as a persistent violent felony offender to indeterminate terms of imprisonment of twenty years to life on the first two counts and to an indeterminate term of imprisonment of three and one-half to seven years on the third count, with all sentences to run concurrently.  Sentencing Tr. (Dec. 9, 2004)(herein, "S") 15 - 16.

**C.      Post-Trial Proceedings**

**1.      State Court Proceedings**

On November 30, 2005, Petitioner appealed his conviction to the Appellate Division,

Second Judicial Department.  Resp't Mem. Ex. A.  In his Appellant's Brief, Petitioner made three

arguments.  First, Petitioner asserted that the prosecution failed to prove his guilt beyond a

reasonable doubt.  Id. at 25 - 34.   Second, Petitioner contended that the trial court wrongly

denied his motion to reopen the suppression hearing.  Id. at 35 - 51.  Third, Petitioner argued that

his sentence was excessive.  Id. at 51 - 58.  On February 6, 2007, the Appellate Division held

that the trial court had erred in denying Petitioner's motion to reopen the suppression hearing,

and remitted the matter to Westchester County Court for a de novo suppression hearing, to be

conducted by a different judge, who was to prepare a report on the results of the hearing.  People

v. Velez, 39 A.D.3d 38, 44 (2d Dep't 2007).  In the interim, the appeal was held in abeyance.

See id. at 45.

The de novo hearing was conducted on June 18 and 19, 2007, by Westchester County

Court Judge Rory Bellantoni.  See D1; see also De Novo Suppression Hrg. Tr. (June 19, 2007)

(herein, "D2").  At the hearing on June 18, 2007, Benash testified that Petitioner was seated

when Nolan and McGee were brought to the scene, and that the police arrested and searched

Petitioner after the identification.  D1: 10 - 13, 28.  McGee testified that when he was brought to

McLean Avenue, Petitioner was lying down, but that he identified Petitioner before the police

searched Petitioner or handcuffed him.  D1: 56 - 58.  Nolan again testified that Petitioner was

lying face down and in handcuffs, being searched by police, when Nolan arrived at the scene.

D1: 111 - 113.

7

Prestamo testified that Petitioner sat while the officers waited for Kreso to bring the witnesses, and that when they arrived, Benash had Petitioner stand up. D2: 145.  Prestamo stated that after Kreso gave the nod, Benash put Petitioner on his stomach on the ground, handcuffed him, and searched him. D2: 146 - 47.  Yonkers Police Officers Michael Kostewich and Thomas Drogan also testified at the de novo hearing that they were present at the scene of Petitioner's arrest. D2: 168 - 172, 182, 187 - 190.  Kostewich, like Prestamo, testified that Petitioner was sitting on the curb when he first saw him, that Benash had Petitioner stand up when the witnesses arrived, and that after the identification had been made, Petitioner was forced to the ground, handcuffed, and searched. D2: 171.  Drogan testified that he stopped Petitioner along with Prestamo and Benash and that Petitioner was seated before the witnesses arrived. D2: 182 - 190.  However, as the witnesses drove up to the scene, Petitioner began to get "hinky," or restless, and "gave us a hard time," so Drogan and the other officers subdued him by forcing him to the ground, where he was handcuffed and searched. D2: 202.

After hearing oral argument on the motion on August 1, 2007, Judge Bellantoni issued a written report on the de novo hearing on October 30, 2007, in which he denied Petitioner's motion to suppress. People v. Velez, 18 Misc.3d 1102(A) (County Court 2007).  First, the court concluded that all witnesses testified credibly at the hearing. Id. at 4.  Second, the court found that police had probable cause to arrest Petitioner, even before Nolan and McGee identified him, from Nolan's detailed description of Petitioner's appearance and suspicious actions, and from the fact that Petitioner was arrested close to the location of the reported incident, a short time after Nolan's call. Id. at 6 - 7.  As the court concluded that Petitioner's arrest was lawful even if it had occurred prior to the identification, the court determined that the physical evidence obtained incident to the arrest was admissible. Id. at 7.  Third, the court determined that although the

8

show-up identification procedure was unduly suggestive, the witnesses' identifications of Petitioner during trial were still reliable, as their interactions with and observations of Petitioner prior to the show-up provided an independent basis for their in-court identification. Id. at 8. Therefore, the judge denied Petitioner's motion to suppress the identification testimony. Id.

On January 18, 2008, Petitioner submitted a supplemental brief to the Appellate Division in which he challenged the conclusions in Judge Bellantoni's report. Resp't's Mem. Ex. E. On February 10, 2009, the Appellate Division affirmed Petitioner's conviction, and adopted Judge Bellantoni's analysis. People v. Velez, 59 A.D.3d 572 (2d Dep't 2009). On March 3, 2009, Petitioner submitted a letter application for leave to appeal this decision to the New York Court of Appeals. See Resp't's Mem. Ex. H. On May 11, 2009, the Court of Appeals summarily denied Petitioner's application for leave to appeal. People v. Velez, 12 N.Y.3d 860 (2009).

### 2.    Federal Court Proceedings

On June 19, 2009, the instant Petition was received by the Clerk's Office of the United States District Court for the Eastern District of New York. D.E. 1. By Order dated June 25, 2009, the Honorable Kiyo Matsumoto, United States District Judge, transferred the case to this Court pursuant to 28 U.S.C. § 1406(a). D.E. 1. Petitioner submitted an application for the appointment of pro bono counsel on September 9, 2009, D.E. 2, which I denied on February 24, 2010, D.E. 22.

## DISCUSSION

### I.    Standard of Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190 - 91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b)(1), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B)(i) there is an absence of available State corrective process; or
>>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion requirement has been satisfied. See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state court. Picard, 404 U.S. at 275 - 76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [that the petitioner] asserts in federal court.' " Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at

10

191).  In other words, the claim must have been presented in a way that is "likely to alert the

court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is

satisfied if the state court brief contains phrases, such as "under the due process clause" or

"under the Constitution," that point to the petitioner's reliance on the United States Constitution

as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).  A claim

may be considered "presented" even if the federal grounds were not explicitly asserted before the

state courts if the petitioner, in asserting his or her claim before the state court, did one of the

following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on

pertinent state cases that apply constitutional analysis in similar fact situations, (3) asserted his

or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or

(4) alleged a fact pattern that falls within the mainstream of constitutional litigation.  See Daye,

696 F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate

state court and having been denied relief, the petitioner must appeal his or her conviction to the

highest available state court.  Klein, 667 F.2d at 282.  Where a petitioner fails to present his or

her federal constitutional claim to the highest available state court, the claim cannot be

considered exhausted.  Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)).

There is, however, another avenue available for exhaustion purposes.  A petitioner who has

failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion

requirement by utilizing available state methods for collaterally attacking his or her state

conviction.  See Klein, 667 F.2d at 282 - 83; see also Johnson v. Metz, 609 F.2d 1052, 1055 - 56

(2d Cir. 1979) (instructing a habeas petitioner who did not fairly present claim in the course of

his direct appeal to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc.

11

Law § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion

requirement by employing the state appellate procedures available for review of such denial.

Klein, 667 F.2d at 282 - 83.

      When a state court has decided a claim on the merits, the federal court must apply

AEDPA's deferential standard of review.  See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003).

Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>       (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>       (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

      A state court decision is " 'contrary to' clearly established Supreme Court precedent if 'the

state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts.' "  Torres, 340 F.3d at 68 (quoting Williams v. Taylor, 529

U.S. 362, 412 - 13 (2000))(alterations in original).  "[A]n unreasonable application of clearly

established Supreme Court precedent occurs when a state court identifies the correct governing

legal principle from the Supreme Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case."  Torres, 340 F.3d at 68 (internal quotation marks and citation

omitted).  While "it is clear that the question is whether the state court's application of clearly

established federal law was objectively unreasonable, the precise method for distinguishing

objectively unreasonable decisions from merely erroneous ones is less clear.  However, it is

well-established in [the Second Circuit] that the objectively unreasonable standard of §

2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in

order to obtain habeas relief." Id. at 68 - 69 (internal quotation marks and citations omitted).

In conducting this analysis, federal courts are to presume that the factual findings of state

courts are correct. Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must

rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.    Petitioner's Claims

### A.      Petitioner's legal insufficiency and weight of the evidence claims should be denied.

Petitioner first claims that his conviction "should not be permitted to stand where the

[WCDA] failed to prove Petitioner's guilt beyond a reasonable doubt due to both legal

insufficiency and weight of evidence grounds." Pet. ¶ 5.   For the reasons that follow, I conclude,

and respectfully recommend that Your Honor should conclude, that both Petitioner's legal

insufficiency and weight of the evidence claims should be denied.

#### 1.      Petitioner's sufficiency of the evidence claim should be denied because he has procedurally defaulted this claim.

Petitioner challenged the sufficiency of the evidence against him on direct appeal to the

Appellate Division.  See Resp't's Mem. Ex. A at 25 – 34.  The Appellate Division denied this

claim as follows:

> The defendant's contention that the evidence was legally insufficient to
> support a conviction for burglary is unpreserved for appellate review, and in any
> event, is without merit. Viewing the evidence in the light most favorable to the
> prosecution, we find that it was legally sufficient to establish the defendant's guilt
> of burglary in the second degree beyond a reasonable doubt. Moreover, upon our
> independent review pursuant to CPL 470.15(5), we are satisfied that the verdict of
> guilt was not against the weight of the evidence.

People v. Velez, 59 A.D.3d 572, 575 (2d Dep't 2009)(internal citations omitted).  Respondent contends that this holding represents an independent and adequate state law ground which prevents this Court's consideration of the merits of Petitioner's claim.  Resp't's Mem. 18 - 19.

The independent and adequate state ground doctrine deprives federal courts of jurisdiction to consider federal constitutional claims in a habeas petition if those claims were previously denied in state court on a state law ground which was "both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."  See Harris v. Reed, 489 U.S. 255, 261 (1989); see also Coleman v. Thompson, 501 U.S. 722, 729 - 30 (1991).  A state procedural rule is generally an "adequate" state ground if it is "firmly established and regularly followed." See Lee v. Kemna, 534 U.S. 362, 376 (2002)(internal quotations omitted).  In order for this doctrine to apply, the last-reasoned state court decision denying the federal constitutional claim must have "clearly and expressly" stated that its denial rested on an independent and adequate state law ground.  See Harris, 489 U.S. at 263 (internal quotations omitted).  Thus, if a habeas petitioner has defaulted his or her federal constitutional claim in state court by failing to comply with a state procedural rule, that procedural default will only bar federal habeas review if the state court clearly and expressly relied on the procedural default in rejecting the claim.  See Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).  Even if the state court did so, the petitioner may still be entitled to federal habeas review if he or she can show cause and prejudice for the default, or that a miscarriage of justice will result if the federal court does not reach the merits of his or her claim.  See id.

Here, the Appellate Division rejected Petitioner's legal insufficiency claim because he failed to comply with a state procedural rule, and, "in any event," denied the claim on the merits. See Velez, 59 A.D.3d at 575 (citing N.Y. Crim. Proc. Law § 470.05(2) and People v. Hawkins,

11 N.Y.3d 484, 492 - 93 (2008)).  With its allusion to <u>People v. Hawkins</u>, the appellate court determined that Petitioner procedurally defaulted this claim because he did not preserve this claim for appellate review by moving for a trial order of dismissal "specifically directed at the error being urged" on appeal.  <u>See</u> <u>Hawkins</u>, 11 N.Y.3d at 492 (internal quotation marks omitted).  Although Petitioner did move for a trial order of dismissal at the conclusion of the People's case, he did so in general terms.  T: 546: 14 - 17 ("I'll move to dismiss all counts on the grounds that the People failed to establish a prima facie case, and I'll ask for a trial order of dismissal.").  On appeal, however, Petitioner argued that the evidence supporting his burglary convictions was insufficient for a number of specific reasons, including the alleged absence of any direct evidence that Petitioner had committed burglary and lack of proof of the time the burglary was committed.  Resp't's Mem. Ex. A 28 - 34.  Under <u>Hawkins</u>, Petitioner's "general motion" did not alert the trial court to the specific errors he later asserted on appeal, so those errors were unpreserved for appellate review.  11 N.Y.3d at 492.

Habeas review of this claim is foreclosed because the Appellate Division "clearly and expressly" stated that its denial of this claim was based on Petitioner's failure to preserve this claim for appellate review, which is an independent and adequate state law ground for that denial.  <u>See</u> <u>Hawkins</u>, 11 N.Y.3d at 492 (Court of Appeals has "repeatedly" emphasized the requirement that general motions for dismissal do not preserve a specific challenge to the sufficiency of the evidence for appellate purposes).  The fact that the Appellate Division determined that, "in any event," the claim was meritless, does not affect my conclusion.  <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n. 10 (1989)(a habeas claim is still procedurally defaulted even if the state court rules on the merits of the federal claim in an alternative holding, as long as the state court "explicitly invokes a state procedural bar rule as a separate basis for decision");

<u>see</u> <u>also</u> <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005)("even when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.")

As Petitioner has not established either cause or prejudice or that failure to consider the merits of this claim will result in a miscarriage of justice, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

### 2.   Petitioner's weight of the evidence claim should be denied because such claims are not cognizable on habeas review.

Petitioner's weight of the evidence claim should be denied because such claims are considered to be purely state law claims and are therefore not cognizable on habeas review.  <u>See</u> <u>Garrett v. Perlman</u>, 438 F.Supp.2d 467, 470 (S.D.N.Y. 2006); <u>Douglas v. Portuondo</u>, 232 F.Supp.2d 106, 116 (S.D.N.Y. 2002); <u>Perez v. Smith</u>, 791 F.Supp.2d 291, 303 (E.D.N.Y. 2011). Thus, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

### B.   Petitioner's challenge to the trial court's denial of his motion to reopen the suppression hearing should be denied.

Petitioner claims that the trial court "erroneously denied Petitioner's motion to reopen the suppression proceeding, given that . . . the testimony of prosecutor witness James Nolan, not previously available to the defense, established Petitioner's arrest not [to] be based upon probable cause and warranted suppression of physical evidence seized from Petitioner, as well as identification testimony." Pet. ¶ 5. Respondent contends that this claim has been mooted because the Appellate Division already granted Petitioner a <u>de novo</u> suppression hearing in

response to this claim. Resp't's Mem. 25. For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

Petitioner raised this claim in his appellate brief to the Appellate Division, and incorporates that argument by reference in his Petition. Pet. ¶ 8; Resp't's Mem. Ex. A 35 - 51. This claim arose out of an inconsistency between Nolan's trial testimony and the suppression hearing testimony of police officers concerning the circumstances of the so-called "show-up" identification of Petitioner by Nolan and McGee. At the pretrial suppression hearing, only Yonkers Police Officers Roger Benash and Michael Kreso testified. H: 5, 37. Kreso testified that he responded to 184 Tibbetts Road in Yonkers after hearing a radio report of a Hispanic male in the area who was ringing doorbells. H: 7. Kreso spoke with McGee and Nolan, both residents of Tibbetts Road. H: 7. Kreso testified that Nolan, who lived a few houses away from 184 Tibbetts Road, told him he had seen a Hispanic male on his neighbor's property, wearing a blue jacket with a yellow collar, who had fled the property toward McLean Avenue on a yellow scooter with no plates. H: 7, 9. McGee's description of the Hispanic male matched Nolan's. H: 10. Kreso testified that fellow Yonkers Police Officer Henry determined that a window of 184 Tibbetts was open, and Kreso broadcast the description of the suspect on his police radio. H: 9. Approximately ten minutes later, Kreso received a report that an individual matching the description had been stopped several blocks from 184 Tibbetts Road, and drove Nolan and McGee to where the individual had been stopped. H: 11. Kreso told them the purpose of the drive was for them to "possibly see if that individual was the same individual" that they had previously identified. H: 11.

Kreso testified that when they drove up to Petitioner, he was sitting on the sidewalk and was not wearing handcuffs. H: 12 - 13. A yellow scooter lay several feet from him and in plain

17

view of the witnesses. H: 32. Kreso stated that both men identified Petitioner as the same man they had seen in their neighborhood, and that one of the men stepped out of the police car to confirm his identification, although Kreso did not recall which witness did so. H: 31. Kreso testified that after the witnesses identified Petitioner as the suspect, Kreso indicated that they had done so to the other officers at the scene by nodding his head affirmatively, and those officers arrested and handcuffed Petitioner. H: 33, 36.

Detective Benash testified at the pretrial hearing that he observed an individual matching the broadcast description, and stopped Petitioner, explaining that he was investigating a nearby incident and that Petitioner fit the description. H: 42. Benash asked Petitioner to sit on the sidewalk, and when Kreso drove up with the witnesses and nodded to Benash to indicate Petitioner had been identified, Benash directed Petitioner to lie on his stomach and handcuffed him. H: 44. Benash searched Petitioner at the time of his arrest, and recovered two boxes of jewelry, World War II medals,[4] and coins, as well as an envelope of cash. H: 46. The detective testified that when he found the valuables on Petitioner's person, Petitioner spontaneously told him that the jewelry was his girlfriend's and the money was his friend's. Id.

At the conclusion of the hearing, the trial court rejected Petitioner's motions to suppress both the physical evidence recovered during the search and the witnesses' identifications. Hrg. Tr. (Oct. 12, 2004)(herein, "H3") 8 - 9. The court concluded that the police had reasonable suspicion to stop Petitioner while he was driving his scooter because Petitioner matched the broadcast description of the suspect and because he was stopped close to the location of the crime. H3: 7. "Probable cause to arrest the defendant arose once the witnesses identified him."

---

[4]In fact, the hearing transcript refers to World War II "metals," not medals, but from the context it appears Benash said the latter.

Id. As the arrest was lawful, the search incident to arrest was lawful, and the court denied Petitioner's motion to suppress the evidence gathered during that search. H3: 8. The court rejected Petitioner's motion to suppress the witnesses' identifications because it determined that the show-up procedure was not unduly suggestive. H3: 9.

However, Nolan's and McGee's testimony at trial contradicted Kreso's and Benash's testimony at the pretrial hearing. Nolan testified that when Kreso drove him to where Petitioner had been stopped and he first saw Petitioner there, the police already had Petitioner face down on the ground, handcuffed, and they were searching him. T: 279 - 80. McGee also testified that when he identified Petitioner, Petitioner was being held to the ground by police. T: 294, 305. Kreso and Benash, on the other hand, had testified during the suppression hearing that when Nolan made the identification, Petitioner was seated on the sidewalk and was not in handcuffs, and that it was only after Nolan and McGee identified Petitioner that Petitioner was searched.

In light of Nolan's testimony, Petitioner moved the court, during trial, to reopen the suppression hearing pursuant to New York Crim. Proc. Law § 710.40(4).[5] T: 407. The trial court denied this motion, reasoning that because Petitioner was presumed to know the circumstances of his arrest, and had not called Nolan as a witness at the pretrial hearing, Nolan's testimony did not present "pertinent facts . . . which he could not have discovered with reasonable diligence before the determination of the motion," as required by N. Y. Crim. Proc. Law § 710.40(4). T: 413 - 414. The trial court ordered the trial to continue, and Petitioner was duly convicted.

---

[5]"If after a pre-trial determination and denial of the motion the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, it may permit him to renew the motion before trial or, if such was not possible owing to the time of the discovery of the alleged new facts, during trial." N. Y. Crim. Proc. Law § 710.40(4).

Petitioner challenged the trial court's determination that reopening the suppression hearing was unwarranted on direct appeal to the Appellate Division. Resp't's Mem. Ex. A 35 - 51. He argued that the trial court erred in concluding that Petitioner had failed to exercise due diligence to discover Nolan's testimony prior to trial, because Petitioner's counsel had done all that could reasonably be expected of him. Id. at 46. Although Petitioner had told his attorney that police had stopped him at gunpoint and had immediately forced him to lie on his stomach, handcuffed him, and searched him, T: 411 - 12, Petitioner was not aware that Nolan and McGee witnessed any part of his arrest. Resp't's Mem. Ex. A 48. Petitioner's counsel's failure to call Nolan as a witness during the suppression hearing was therefore excusable. Nolan's testimony was "pertinent" to the suppression motion because the trial court's determination that physical evidence recovered from Petitioner was admissible was based on the lawfulness of Petitioner's arrest. At the suppression hearing, the trial court had explained that Petitioner's arrest was lawful because the identification by Nolan and McGee gave police probable cause to arrest Petitioner. If Petitioner was in fact arrested before Nolan and McGee made the identification, as their trial testimony suggested, then the basis for the trial court's ruling on the suppression motion would have been undermined.

The Appellate Division agreed with Petitioner that the trial court had erred in denying his motion to reopen the suppression hearing because Petitioner had established that Nolan's testimony constituted new evidence pertinent to the determination of the suppression motion which could not have been discovered with reasonable diligence prior to the trial court's initial ruling on the motion. People v. Velez, 39 A.D.3d 38, 44 (2d Dep't 2007). That court remitted the matter to the trial court, ordering a different judge to conduct a de novo suppression hearing on Petitioner's motion to suppress physical evidence and identification testimony. Id. at 45.

20

That de novo suppression hearing took place on June 18 and 19, 2007, before Westchester County Court Judge Rory Bellantoni.  The Appellate Division affirmed the conclusions in Judge Bellantoni's Report after Petitioner appealed Judge Bellantoni's decision.  People v. Velez, 59 A.D.3d 572, 574 - 75 (2d Dep't 2009).

Respondent argues that this Court should deny this claim because the state courts already granted Petitioner relief on this claim, in that a de novo suppression hearing was ordered. Resp't's Mem. 25.  In his Reply, Petitioner disagrees that this claim is moot, although his argument is somewhat difficult to follow.  See Traverse, D.E. 23, at 9.  It appears that in fact Petitioner is challenging the results of the de novo suppression hearing and the subsequent affirmation of his conviction by the Appellate Division, not the trial court's denial of his motion to reopen his suppression hearing, or the Appellate Division's decision to permit him to have a de novo suppression hearing.  Traverse 9 - 14.  Petitioner's challenge to the Appellate Division's decision adopting Judge Bellantoni's report, and affirming Petitioner's conviction, is discussed in Section II.D., infra.  Any claim challenging the trial court's denial of Petitioner's motion to reopen the suppression hearing has been rendered moot by the Appellate Division's decision to grant Petitioner a de novo suppression hearing.  See Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008)(dismissing petitioner's challenge to conditions in state prison as mooted by his transfer to federal prison).

Even if this claim was not moot, I would still recommend its denial as unexhausted and now procedurally defaulted.  Although Petitioner did not obtain all the relief he sought when he first raised this claim to the Appellate Division, which included reversal of his conviction as well as a reopened suppression hearing, see Resp't's Mem. Ex. A 59, any challenge to the Appellate Division's decision not to grant his request for reversal is unexhausted because Petitioner did not

21

fairly present any such claim to the Court of Appeals.  Such an unexhausted challenge will be deemed to be procedurally defaulted, because Petitioner's opportunity to appeal has passed, and any such renewed application would be time-barred.  Similarly, any effort to bring the claim pursuant to N.Y. Crim. Proc. L. § 440.10 would be dismissed, because the issue is on the record and therefore is not cognizable on a § 440.10 motion.  See Section C, infra.  As a result, this claim is deemed procedurally barred.  I would recommend the denial of this claim on this ground even if the relief provided by the Appellate Division had not rendered this claim moot.

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

### C.    Petitioner's claim **that his sentence is excessive should be denied.**

Petitioner claims that his sentence violates the Eighth Amendment.  Pet. ¶ 5.  For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner has procedurally defaulted this claim, and it should therefore be denied.

Petitioner has procedurally defaulted this claim because he has failed to fairly present this claim to the highest available state court.  See Klein, 667 F.2d at 282.  Petitioner raised this claim in his appellate brief to the Appellate Division, see Resp't's Mem. Ex. A 51 - 58, and that court rejected it on the merits.  Velez, 59 A.D.3d at 575.  Petitioner, however, did not raise this claim in his application for leave to appeal the Appellate Division's decision to the Court of Appeals.  See Resp't's Mem. Ex. H.  In that application, he only challenged the Appellate Division's determination that suppression of identification testimony was not warranted.  Id. Petitioner therefore failed to exhaust this claim on direct appeal.  See Grey v. Hoke, 933 F.2d 117, 119 - 120 (2d Cir. 1991).

Petitioner now has no further means of raising this claim in state court. He now cannot present this claim to the Court of Appeals because New York State law permits only one application for leave to appeal, see People v. McCarthy, 250 N.Y. 358, 361 (1929), which Petitioner has already made. Petitioner also cannot raise this claim in a motion to vacate his sentence under N.Y. Crim. Proc. Law § 440.20, as New York State law mandates the denial of any claim raised in a collateral attack which was already adjudicated on the merits on direct appeal, and the Appellate Division already rejected Petitioner's excessive sentence claim on the merits. See N.Y. Crim. Proc. Law § 440.20(2).

Therefore, as "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," Petitioner has procedurally defaulted this claim. See Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991). This procedural default prohibits this Court from evaluating this claim unless Petitioner can show cause for the default and prejudice, or that failure to reach the merits of this claim will cause a miscarriage of justice. See Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997). Petitioner has not met this burden. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied as procedurally defaulted.

**D.     Petitioner's claim challenging the admission of identification testimony should be denied.**

Petitioner claims that the state courts erred in denying his motion to suppress the identification testimony following the de novo suppression hearing. Pet. ¶ 5. He incorporates by reference the argument made on direct appeal from that hearing contained in his supplemental appellate brief. Pet. ¶ 8. Therein, Petitioner argued that the police lacked reasonable suspicion to stop Petitioner, let alone probable cause to arrest him, prior to the witnesses' identification.

23

Resp't's Mem. Ex. F 32 - 33. Petitioner also contended that the witnesses lacked an independent

basis for their in-court identifications of Petitioner, apart from the suggestive show-up, so that

testimony should have been suppressed. Id. at 34. Petitioner argued that Judge Bellantoni could

not have properly evaluated the evidence adduced at the de novo suppression hearing because he

determined that all witnesses who testified were credible, even though their testimony was

allegedly inconsistent, and so Petitioner requested that the Appellate Division make its own

findings of fact based on the record developed during the hearing. Id. at 6, 38.

The Appellate Division rejected this claim and affirmed Petitioner's conviction. People

v. Velez, 59 A.D.3d 572 (2d Dep't 2009). The appellate court concluded that the County Court

correctly determined that police had probable cause to arrest Petitioner even prior to the

witnesses' identification because "Probable cause exists where . . . the police officer observes a

suspect in close proximity to the scene of the crime and to the time of its commission and the

suspect's appearance matches a sufficiently detailed and particular description of the perpetrator

which has been received by the officer." Id. at 574 (quoting People v. Blount, 143 A.D.2d 924,

925 (2d Dep't 1988)). Thus, the Appellate Division held that the physical evidence was

admissible because the arrest was lawful, even if it occurred prior to the identification. Id. at

575. The Appellate Division further concluded that, as Judge Bellantoni had determined, the

identification procedure was unduly suggestive, but the witnesses' in-court identification of

Petitioner was still admissible because their identification was "based on a sufficiently

established independent source." Id.

Petitioner sought leave to appeal the Appellate Division's determinations that probable

cause existed for his arrest before the identifications and that identification testimony was

admissible because the witnesses had an independent basis for their identifications. Resp't's

24

Mem. Ex. H. Therein, he argued that probable cause did not exist for Petitioner's arrest because "the actions of the police in searching [Petitioner] and seizing items from him, while simultaneously conducting a show-up identification procedure nullified whatever reasonable suspicion or probable cause that might have been present." Id. at 5(emphasis in original). Petitioner also asserted that the witnesses' prior exposure to Petitioner when they observed him in their neighborhood was too brief to provide an independent basis for the identification, so their testimony should have been excluded. Id. at 2 - 3. The Court of Appeals denied Petitioner's application for leave to appeal. People v. Velez, 12 N.Y.3d 860 (2009).

As Petitioner fairly presented the factual and legal basis of this claim to the highest available state court, he has exhausted this claim. Nonetheless, habeas relief is unavailable here. To the extent that Petitioner asserts a violation of his Fourth Amendment rights, habeas review of any such claim is foreclosed by Stone v. Powell, 428 U.S. 465, 482 (1976): "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." There are two exceptions to this rule: "(a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant is precluded from using that mechanism because of an unconscionable breakdown in the underlying process." See Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Petitioner argues that his claim falls under the latter exception. Traverse 15.

To determine if there has been an unconscionable breakdown in the state process, courts look to "the existence and application of the corrective procedures themselves" as opposed to the "correctness of the outcome resulting from the application of adequate state court corrective

procedures." Capellan, 975 F. 2d at 71. Petitioner has not established that he was precluded from utilizing state court corrective procedures. Indeed, he was granted a de novo suppression hearing by Appellate Division, and appealed the result of that hearing to the highest available state court. Although Petitioner argues that Judge Bellantoni's report was against the "law of the case" as contained in the Appellate Division's decision ordering the hearing because the report did not resolve the apparent contradiction between the officers' and the lay witnesses' testimony to Petitioner's satisfaction, Petitioner has misread the Appellate Division's decision. The Appellate Division did not direct the County Court to choose between competing versions of events, but to reopen the suppression hearing to decide the suppression motion on a new record. Because the County Court concluded that even if the show-up procedures were as suggestive as Nolan's and McGee's testimony indicated, their identification testimony was still admissible, and even if Petitioner was arrested prior to the identification, his arrest was supported by probable cause, any apparent contradiction between the officers' and the witnesses' testimonies did not affect the County Court's decision. Moreover, Petitioner's challenge to the conclusions in the report is not a challenge to the procedures used by the state courts, but to the outcome of the proceeding, and therefore does not qualify as a claim that there was an underlying breakdown in the corrective process sufficient to permit habeas review of this claim.

To the extent that Petitioner is in fact alleging that the show-up identification procedure was so suggestive that the witnesses' in-court identifications were unreliable, and that their admission therefore violated due process, any such claim is meritless. As Petitioner has exhausted this claim, and the state courts rejected it on the merits, the appropriate standard of review is the deference contained in AEDPA: this Court may not grant relief on this claim unless the state court's denial of this claim was contrary to or an unreasonable application of clearly

established Federal law, as defined by Supreme Court precedent.  Although the state courts determined that the show-up identification procedure was unduly suggestive, based on "the totality of the circumstances . . . the eyewitness[es] had a sufficient independent basis for making a reliable . . . identification" of Petitioner.  See Conner v. Poole, 440 Fed.Appx. 29, 31 (2d Cir. 2011). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199 (1972).  Both Nolan and McGee had an opportunity to view Petitioner at the time of the crime.  T: 220 - 34, 290 - 91.  Nolan in particular observed Petitioner closely.  See T: 220 - 34.  Their descriptions of Petitioner's clothing, appearance, and distinctive scooter were accurate.  T: 356 - 57, 490 - 92.  Both men also identified Petitioner with certainty, and only approximately fifteen minutes elapsed between Nolan's observation of Petitioner and his arrest.  T: 280 - 81, 294 - 95; H: 10 - 11; D1: 56 - 58, 111 - 113.  Application of the factors in Biggers indicates that the witnesses' identifications of Petitioner were reliable.  Thus, the state courts' determination that the witnesses had an independent basis to make their in-court identifications of Petitioner was not contrary to or an unreasonable application of clearly established Federal law, as established by Supreme Court

precedent.[6] See generally Brisco v. Ercole, 565 F.3d 80 (2d Cir. 2009). I therefore conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

**E.      Petitioner's claim that the prosecutor withheld exculpatory evidence should be dismissed.**

Petitioner's final claim is that the prosecutor failed to provide him with exculpatory evidence in a timely manner,[7] in violation of Brady v. Maryland, 373 U.S. 83 (1963). Pet. ¶ 5. For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that this claim is unexhausted, and should be denied.

Petitioner has not exhausted this claim because he has not previously raised it in state court. See Resp't's Mem. Ex's A, E. As Petitioner fails to provide any facts in support of this claim, it is impossible to determine whether Petitioner could still raise this claim in state court by way of a collateral attack. If he could not, then I would deem this claim exhausted but procedurally defaulted, and, for the reasons stated previously, would recommend denial of this claim. If Petitioner could still raise this claim in state court, then it would be unexhausted. See 28 U.S.C. § 2254(c). Courts faced with petitions which contain both exhausted and unexhausted claims, so-called "mixed" petitions, can proceed in several ways: (1) by dismissing the petition in its entirety, see Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001); (2) by denying the unexhausted claims on the merits, 28 U.S.C. §2254(b)(2); (3) in limited circumstances, by

---

[6]Petitioner also argues that the suggestive show-up identification procedure somehow nullifies the witnesses' independent basis for identification. Traverse 23. This argument, however, is based on the independent source doctrine, see Segura v. United States, 468 U.S. 796 (1984), which construes the exclusionary rule of Fourth Amendment jurisprudence, and does not apply to the question of whether Nolan's and McGee's in-court identification testimony violated due process.

[7]Petitioner in fact claims that the prosecutor failed to provide Brady material in a "timely matter," but I assume that "matter" is merely a typographical error, and that Petitioner in fact meant a "timely manner." Pet. ¶ 5.

staying the petition to permit the petitioner to exhaust the unexhausted claims and return to federal court without running afoul of the AEDPA statute of limitations, see Rhines v. Weber, 544 U.S. 269, 277 (2005); or (4) where a stay is inappropriate, by "allow[ing] the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief," id. at 278. Staying a petition is only appropriate where the petitioner has demonstrated good cause for failure to exhaust his or her unexhausted claims in state court prior to filing the petition, and where those claims are not "plainly meritless." Id. at 277.

Here, I decline to recommend dismissal of the Petition in its entirety on the ground that it is a mixed petition, as Petitioner would now be time-barred from returning to federal court after exhaustion of this claim. See 28 U.S.C. § 2244(d)(1). Although 28 U.S.C § 2254(b)(2) permits me to reach the merits of unexhausted claims, as Petitioner has provided no factual explanation of or support for this claim, I cannot evaluate its merit. A stay is inappropriate; Petitioner has not sought a stay, nor has he established either good cause for failure to first raise this claim in state court or that it is not plainly meritless. Thus, I deem the Petition amended to delete this claim, on the assumption that Petitioner would prefer the Court to consider the remaining claims, rather than dismiss the Petition outright and thereby foreclose any return to federal court. See McRae v. Artus, No. 10–CV–2988 (RRM), 2012 WL 3800840, at * 10 (E.D.N.Y. Sept. 2, 2012).[8] I therefore conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

---

[8]Copies of unpublished decisions cited herein have been provided to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant Petition should be dismissed. As the Petition presents no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90 - 91 (2d Cir. 1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Nelson Román, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Román.

Dated: August 16, 2013
      White Plains, New York

Respectfully submitted,

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Nelson Román

Julio Velez
DIN #04-A-6809
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

John J. Sergi
Westchester County District Attorney's Office
111 Dr. Martin Luther King Jr. Blvd
White Plains, New York 10601